UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| GLENN GARY,<br><br>                    Petitioner,<br><br>          v.<br><br>M.C. KRAMER,<br><br>                    Respondent. | No.  CV-06-02821-FVS<br><br>ORDER DENYING PETITION FOR<br>WRIT OF HABEAS CORPUS |

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. (Ct. Rec. 1).  Petitioner is proceeding pro se.  Respondent is represented by Robert C. Cross of the California Attorney General's Office.

**BACKGROUND**

At the time this petition was filed, Petitioner was in the custody of the Folsom State Prison in Folsom, California, pursuant to his August 19, 1982 conviction for first-degree murder with use of a firearm.  (Ct. Rec. 1).  Petitioner is currently serving a sentence of 25-years-to-life with the possibility of parole.  Petitioner has not been found suitable for parole.  Petitioner is challenging the August 4, 2005, decision by Board of Parole Hearings of the State of California ("BPH") finding him unsuitable for parole.  (Ct. Rec. 1).

Order - 1

**I.    FACTUAL HISTORY**

On March 11, 1981, the body of Casey Wallace was found in an orchard in Stanislaus County. (Ct. Rec. 1, Exh. C).[1] Wallace died from multiple gunshot wounds to the head. The entry wounds were in Wallace's face, and there were three (3) .38-caliber bullets found in his body.

At the time of Wallace's death, Petitioner was the president of the Bar Hoppers Motorcycle Club. Christopher Avila, another member of the club, testified under a grant of immunity that Petitioner told him he killed Wallace. According to Avila, Petitioner said Wallace was killed because he was involved in an attempt to have Petitioner assassinated by another motorcycle club. Avila testified that Petitioner told him he shot Wallace in the head three times with a .38-caliber revolver in an orchard near Turlock, California. Avila further testified that Petitioner thought it "comical" that he had "blow Wallace away with his own weapon."

On the morning of the murder, Mr. Hammond, another member of the motorcycle club, was present at Petitioner's residence. He testified (under immunity) that Petitioner told him, "I blew that [expletive] away." Hammond also testified that Petitioner told him he shot Wallace three times in the head, and the shooting took place in an orchard.

---

[1] The Factual History is taken from the Fifth Appellate District's opinion denying relief on appeal. These facts were adopted by the BPH as the basis for their denial of Petitioner's parole.

Order - 2

**II.   PROCEDURAL HISTORY**

Petitioner was convicted in Stanislaus County Superior Court on August 19, 1982.  (Ct. Rec. 1).  On September 15, 1982, he was sentenced to 25 years to life, plus a two-year enhancement for use of a firearm.  (Ct. Rec. 10, Exh. A).  After serving two years for the firearm enhancement, Petitioner began serving his life term on July 18, 1985.  (Ct. Rec. 1, Exh. E).  Petitioner has been incarcerated for the past 28 years.  Petitioner's minimum eligible parole date ("MPED") was May 17, 1998.  (Ct. Rec. 1, Exh. E).

On August 4, 2005, the BPH found Petitioner unsuitable for parole.  (Ct. Rec. 1).  After he was denied parole, Petitioner filed habeas petitions with the Stanislaus County Superior Court, the Fifth District Court of Appeals, and the California Supreme Court, all of which were denied.  (Ct. Rec. 1, Exhs. M, N).

Petitioner filed this petition for writ of habeas corpus on December 13, 2006.  (Ct. Rec. 1).  Respondents filed a response to the petition on March 19, 2007.  (Ct. Rec. 10).  Petitioner filed a traverse to the response on May 9, 2007.  (Ct. Rec. 14).

**DISCUSSION**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief if a state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d)(1)(2009); see

Order - 3

*Williams v. Taylor*, 529 U.S. 362, 399 (2000).  "Clearly established federal law" consists of "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Anderson v. Terhune*, 516 F.3d 781, 798 (9th Cir. 2008) (citing *Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003)).  A decision is "contrary to" clearly established federal law in two circumstances.  First, a state court decision is contrary to clearly established federal law when "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases."  *Williams*, 529 U.S. at 405.  Second, a state court decision is contrary to clearly established federal law when the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Id.* at 412-413.  Under the "unreasonable application" standard, a state court unreasonably applies clearly established federal law when it applies the law in a manner that is "objectively unreasonable."  *Id.* at 409.  "[The] AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) - whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law."  *Lockyer*, 538 U.S. at 71.

   In examining whether state courts reached a decision that was contrary to federal law or whether the state courts unreasonably applied such law, the Court should look to the last reasoned state court decision.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)

*cert*. dismissed, 538 U.S. 919 (2003).  Where no reasoning is given in either the state court of appeals or the state supreme court, Ninth Circuit courts must determine whether a state court's decision was objectively unreasonable based on an independent review of the record. *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (quoting *Delgado v. Lewis*, 223 F.3d 976, 981-982 (9th Cir. 2000)).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  *Id.*

Here, neither the Fifth District Court of Appeal nor the California Supreme Court issued a "reasoned opinion":  both courts summarily denied review.  (Ct. Rec. 1, Exh. N).  Thus, this Court must conduct an independent review of the record in order to determine whether the California courts decisions denying relief were "contrary to, or involved an unreasonable application of, clearly established federal law."

Petitioner alleges that his Fifth and Fourteenth Amendment due process rights were violated because the BPH's denial of parole was not supported by "some evidence", the BPH's failure to set a uniform term is illegal, the BPH's failure to disclose a victim letter until the day of the hearing violated his right to notice, and the Superior Court's "summary denial" is an unreasonable application of the facts and law.  (Ct. Rec. 1).  The Court disagrees for the reasons below.

A prisoner's due process claim is addressed in two steps: first, a court must ask whether the state has interfered with a constitutionally protected liberty or property interest, and second, a

court must decide whether the procedures accompanying the interference were constitutionally sufficient. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460 (1989); *Sass v. Bd. of Prison Terms,* 461 F.3d 1123, 1127 (9th Cir. 2006).

Respondent maintains that California inmates do not have a protected liberty interest in parole. (Ct. Rec. 10 at 3). The United State Supreme Court has determined that state parole statutes create a federally protected liberty interest in parole if the statute uses mandatory language that creates a presumption that parole will be granted if certain findings are made. See *Board of Pardons v. Allen,* 482 U.S. 369, 377-78 (1987); *Greenholtz v. Inmates of Neb. Penal,* 442 U.S. 1, 12 (1979). Respondent bases his claim on *In re Dannenberg,* 34 Cal.4th 1061 (2005). In that case, the California Supreme Court held that the California parole statute was not mandatory because it only required a parole date to be set *after* suitability was established. *Id.* However, the Ninth Circuit has held to the contrary, finding that California life prisoners have a protected liberty interest in parole. *Sass v. California Bd. of Prison Terms,* 461 F.3d 1123, 1127-28 (9th Cir. 2006); *McQuillion v. Duncan,* 306 F.3d 895, 902 (9th Cir. 2002). According to the Ninth Circuit, this liberty interest vests all "prisoners whose sentence provides for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." *Irons v. Carey,* 505 F.3d 846, 850 (9th Cir. 2007). Thus, under Ninth Circuit precedent, California's parole scheme creates a cognizable liberty interest in

Order - 6

parole.

Since Petitioner has a federally protected liberty interest in parole, the Court must determine whether Petitioner was afforded constitutionally sufficient due process during the parole hearing. Under *Greenholtz,* the due process protections guaranteed in a parole hearing are minimal, requiring only an opportunity to be heard and notice of the reasons for the adverse decision. 442 U.S. at 16. Petitioner does not argue that he was deprived of either of these protections. However, he does argue that the BPH decision was not supported by "some evidence." The Ninth Circuit has held that a parole board's decision deprives a prisoner of due process with respect to a constitutionally protected liberty interest in parole if the board's decision is not supported by "'some evidence in the record,' or is 'otherwise arbitrary.'" Irons, 505 F.3d at 851 (quoting Superintendent v. Hill, 472 U.S. 445, 457, 105 S.Ct. 2768 (1985) (holding the "some evidence" standard applies in prison disciplinary proceedings)). The "some evidence" standard requires this Court to determine "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Although *Hill* involved the accumulation of good time credits rather than parole, later Ninth Circuit cases have held that the same constitutional principles apply in the parole context because both situations directly affect the duration of the prison term. *See Jancsek v. Or. Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987) (adopting the "some evidence" standard set forth by the Supreme Court in *Hill* in the parole context); accord, *Sass*, 461 F.3d at 1128-1129;

Order - 7

*Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.  Because the Supreme Court has never held the "some evidence" standard to be applicable in the parole context, Respondent argues that the basic protections of *Greenholtz* are all that is constitutionally required, and that *Greenholtz* is the only "clearly established federal law" on point.  (Ct. Rec. 13 at 7.)  This Court will not address the validity of Respondent's argument, but will proceed in accordance with Ninth Circuit precedent holding that "some evidence" is required to justify the denial of parole.

"To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. Sass, 461 F.3d at 1128 (quoting Hill, 472 U.S. at 455-456).  In order to determine whether "some evidence" supported the BPH's decision with respect to Petitioner, the Court must first consider the California statutes and regulations that govern the BPH's decision-making.  See *Biggs*, 334 F.3d at 915.  Under California law, the BPH must set a release date "unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . and that a parole date therefore, cannot be fixed . . . ." Cal. Penal Code § 3041(b).  The overriding concern in determining parole suitability is public safety and the focus is on the inmate's current

dangerousness.  In re Dannenberg, 34 Cal.4th 1061, 1086 (2005), cert. denied, 546 U.S. 844 (2005).

The BPH has promulgated regulations setting forth the guidelines it must follow when determining parole suitability.  *See* Cal. Code. Regs., tit. 15 § 2402(c) and (d).  Circumstances tending to show that a prisoner is unsuitable for release include the following:

> (1) the commitment offense, where the offense was committed in an "especially heinous, atrocious or cruel manner"; (2) the prisoner's previous record of violence; (3) "a history of unstable or tumultuous relationships with others"; (4) commission of "sadistic sexual offenses"; (5) "a lengthy history of severe mental problems related to the offense"; and (6)"serious misconduct in prison or jail."

Cal. Code. Regs., tit. 15 § 2402(c).  Circumstances tending to show suitability for release include:

> (1) the prisoner has no juvenile record of assaulting others or committing crimes with a potential of personal harm to victims; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has performed acts that tend to indicate the presence of remorse or has given indications that he understands the nature and magnitude of his offense; (4) the prisoner committed the crime as the result of significant stress in his life; (5) the prisoner lacks any significant history of violent crime; (6) the prisoner's present age reduces the probability of recidivism; (7) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release"; and (8) "[i]nstitutional activities indicate an enhanced ability to function within the law upon release."

Cal. Code. Regs., tit. 15 § 2402(d).

In examining its own statutory and regulatory framework, the California Supreme Court recently held that the proper inquiry for a reviewing court is "whether some evidence supports the *decision* of the Board . . . that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." *In re Lawrence*, 44 Cal.4th 1181, 1212

Order - 9

(2008).  The Court also asserted that the Board's decision must demonstrate "an individualized consideration of the specified criteria," but "[i]t is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." *Id*. at 1204-1205.  As long as the evidence underlying the BPH's decision has "some indicia of reliability," parole has not been arbitrarily denied.  *Jancsek*, 833 F.2d at 1390.

In the present case, the BPH determined Petitioner was not suitable for parole because he would pose an unreasonable risk of danger if released from prison. (Ct. Rec. 10, Exh. B at 87).  The BPH informed Petitioner that the denial was based largely on the commitment offense. (Ct. Rec. 10, Exh. B at 87).  In addressing the commitment offense, the BPH noted that it was "certainly callous" and "was carried out in a manner that demonstrates a callous disregard for human suffering." (Ct. Rec. 10, Exh. B at 88.)  The BPH also found that Petitioner had a history of assaultive behavior, including an assault on a federal officer. (*Id.*).  Further, the BPH found that Petitioner failed to benefit from "society's previous attempts to correct his criminality."  (*Id.*)  The BPH also expressed its concern with Petitioner's refusal to accept the gravity of his crime, to show remorse, and his minimization of the role he played in a motorcycle club that participated in criminal activity. (Ct. Rec. 10, Exh. B at 89-91).  While the BPH did commend Petitioner for his discipline-free prison record and participation in educational and treatment programs,

Order - 10

it found him unsuitable for parole.  (Ct. Rec. 10, Exh. B at 87-91). As the record indicates, Petitioner was given individualized consideration by the BPH, and all regulatory factors were considered.

In California the gravity of the commitment offense alone can be a sufficient basis for denying parole where the facts are especially heinous or egregious.  *In re Rosenkrantz,* 29 Cal. 4th 616, 682 (2002); *Sass*, 461 F.3d at 1126; *Biggs*, 334 F.3d at 913-916; *Irons*, 505 F.3d at 852-853.  Here, Petitioner and two other men took the victim, a member of a rival motorcycle club, to an orchard after beating him severely. (Ct. Rec. 10, Exh. B at 14-21).  Once in the orchard, Petitioner shot the victim in the face three times with a .38-caliber handgun.  (*Id.*) The Petitioner also found it "comical" that he shot the victim with the victim's own weapon, and that now members of the rival gang would "know I'm not fucking around."  (*Id.*)  The motivation for the crime was the Petitioner's belief that the victim was involved in a plot to kill Petitioner.  (*Id.* at 88).  Based upon these facts, the BPH held that the crime was especially callous and cruel. (*Id.*)  This Court finds that Petitioner's due process claims must fail because the BPH decision was supported by "some evidence" in the record.

**ORDER**

Based on this Court's review of the record, it finds the decisions of the California courts denying habeas relief were not "objectively unreasonable" because the BPH decision was supported by "some evidence."  Petitioner was given all of the due process protections he is constitutionally entitled to.  Under the AEDPA standard, the state court decisions were not contrary to or

Order - 11

1  unreasonable applications of clearly established federal law, and this
2  Court cannot grant Petitioner habeas relief.  Accordingly,
3  Petitioner's Writ of Habeas Corpus (**Ct. Rec. 1**) is **DENIED**.
4     **IT IS SO ORDERED**.  The Clerk hereby directed to enter this order,
5  furnish copies to counsel, enter judgment for Respondent, and **CLOSE**
6  **THE FILE**.
7     **DATED** this ___28th___ day of April, 2010.

                s/ Fred Van Sickle
                 Fred Van Sickle
         Senior United States District Judge